
IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>)<br>KORBEIN SCHULTZ, )<br>)<br>Defendant. ) | Case No: 3:24-00056<br>18 U.S.C. § 2<br>18 U.S.C. § 201(b)(2)(C)<br>18 U.S.C. § 793(g)<br>22 U.S.C. § 2778(b)(2)<br>22 U.S.C. § 2778(c) |

# INDICTMENT

The Grand Jury charges:

<u>INTRODUCTORY ALLEGATIONS</u>

At all times relevant to this Indictment, unless otherwise indicated:

1.    The defendant, **KORBEIN SCHULTZ**, a Sergeant and Intelligence Analyst in the United States Army, was assigned to the 506th Infantry Battalion. KORBEIN SCHULTZ swore an oath to faithfully discharge his duties as a soldier in the United States Army.

2.    As an Intelligence Analyst, **KORBEIN SCHULTZ's** primary job duties included developing mission analysis products to be used by the commander, command staff, and subordinate units within the U.S. Army; gathering and providing information to assist with mission-oriented decisions of company commanders and others; and assessing enemy composition, disposition, and capabilities. As part of his official duties, **KORBEIN SCHULTZ** had access to national defense information, some of which was export-controlled.

3.    **KORBEIN SCHULTZ's** most recent Non-Commissioned Officer Evaluation Report listed one of his duties as "Classified Document Custodian, Battalion Key control custodian." Part of **KORBEIN SCHULTZ's** job duties entailed training other members of his

unit on the proper handling, storage, and dissemination of classified information and information marked as "Controlled Unclassified Information" ("CUI").[1]

4.     Many of the documents **KORBEIN SCHULTZ** had access to as an Intelligence Analyst contained conspicuous warnings that the documents held technical data that was subject to export controls. The warnings also stated that distribution was limited to authorized U.S. Government agencies and contractors only and that the documents should be destroyed to prevent unauthorized disclosure.

5.     Many of the documents that **KORBEIN SCHULTZ** had access to as an Intelligence Analyst were stored on restricted U.S. Government computer systems that required users to have appropriate credentials.

6.     **KORBEIN SCHULTZ** had a duty to protect national defense information and received training on the proper handling of U.S. Government classified, and controlled unclassified, information. In or around February 2023, **KORBEIN SCHULTZ** signed a memorandum acknowledging a requirement for him to report to the appropriate authorities within 24 hours if he believed someone without authorization to receive classified information has approached him seeking access to classified or sensitive information about United States operations, organizations, equipment, or personnel.

---

[1] CUI is a distinct category of information that, while not classified, is subject to safeguarding procedures and dissemination controls. Executive Order 13556 "establishes an open and uniform program for managing information that requires safeguarding or dissemination controls" for CUI. All U.S. Government agencies are required to develop and implement protective measures, conduct regular training, and establish sanctions and reporting requirements for the misuse or disclosure of CUI. Title 32, Code of Federal Regulations, Section 2002. The Department of Defense implemented Executive Order 13556 via Department of Defense Instruction 5200.4, which mandates the requirements for marking, handling, and disseminating CUI; implements reporting and training requirements for Department of Defense components; and addresses the misuse of CUI.

2

7.    **KORBEIN SCHULTZ** maintained a U.S. security clearance and was eligible to access material classified up to and including the Top Secret//Sensitive Compartmented Information level.

8.    Conspirator A, whose identity is known to the Grand Jury, was a foreign national purporting to reside in Hong Kong and was not entitled to receive either national defense information, or export-controlled information. Conspirator A purported to work for a geopolitical consulting firm based overseas.

9.    **KORBEIN SCHULTZ** was not authorized to disclose sensitive U.S. military information, or export-controlled information, to Conspirator A. Nevertheless, **KORBEIN SCHULTZ** entered into a corrupt scheme whereby he collected and transmitted to Conspirator A, and to other individuals known and unknown to the grand jury, sensitive U.S. military information, including export-controlled information, in exchange for money.

10.    **KORBEIN SCHULTZ** and Conspirator A repeatedly sought to obtain classified U.S. Government information that, if disclosed without authorization, could reasonably be expected to cause damage to the national security of the United States. Conspirator A directed **KORBEIN SCHULTZ** to focus on surreptitiously collecting and transmitting information restricted from public disclosure, precisely because of the value of that non-public information. Moreover, Conspirator A expressly directed **KORBEIN SCHULTZ** to obtain classified information and **KORBEIN SCHULTZ** repeatedly told Conspirator A that he would endeavor to do so.

11.    **KORBEIN SCHULTZ** provided Conspirator A with information regarding the operability of sensitive U.S. military systems and their capabilities. The unauthorized disclosure

3

of this information could cause damage to the national security of the United States and place the safety of **KORBEIN SCHULTZ's** fellow soldiers in jeopardy.

THE ARMS EXPORT CONTROL ACT AND
THE INTERNATIONAL TRAFFIC IN ARMS REGULATIONS

12.     In furtherance of the national security and foreign policy interests of the United States, the export of defense-related articles was regulated by the Arms Export Control Act, Title 22, United States Code, Section 2778 ("AECA"). Section 2778(a) authorized the President of the United States to control the import and export of defense articles and to establish a United States Munitions List ("USML"), which identified and defined the defense articles subject to those controls. Section 2778(b) provided that any person engaged in the business of manufacturing or exporting any defense article shall register with the government. Section 2778(c) established criminal penalties for any willful violation of Section 2778 or any rule or regulation thereunder.

13.     The United States Department of State, through the Directorate of Trade Controls ("DDTC"), implemented these statutory provisions by adopting the International Traffic in Arms Regulations ("ITAR"), Title 22, Code of Federal Regulations, Parts 120 et seq. These regulations established the USML and required an export license for the export of any items on the USML. "Defense articles," as that term is used in Title 22, United States Code, Section 2778(b)(2) and the ITAR, means items, including technical data, designated for placement on the USML as weapons, weapons systems, aircraft, launch vehicles, missiles, bombs, and other implements of war.

14.     With limited exceptions for the closest military allies of the United States, a person or entity seeking to export from the United States designated "defense articles" on the USML must receive a license or other approval from the DDTC.

15.     At no time did **KORBEIN SCHULTZ** obtain a license from the DDTC.

4

## COUNT ONE

## CONSPIRACY TO GATHER, TRANSMIT, OR LOSE DEFENSE INFORMATION
[18 U.S.C. § 793(g)]

16.     Paragraphs 1 through 15 are restated and realleged as if set forth herein.

17.     Beginning in or about June 2022, and continuing through the present, within the Middle District of Tennessee, and elsewhere, **KORBEIN SCHULTZ**, having authorized and unauthorized possession of, access to, and control over documents, writings, blueprints, plans, maps, notes relating to the national defense, and information relating to the national defense which **KORBEIN SHULTZ** had reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, did knowingly and unlawfully conspire together and with Conspirator A and others, known and unknown to the grand jury, to willfully communicate, deliver, and transmit the same to any person not entitled to receive it in violation of Title 18, United States Code, Sections 793(d) and (e).

### Manner and Means of the Conspiracy

18.     **KORBEIN SCHULTZ** and Conspirator A used the following manner and means, among others, to obtain documents, photos, writings, plans, notes, and information relating to the national defense of the United States, for the purpose of willfully communicating such information to individuals not entitled to receive it.

> a.     **KORBEIN SCHULTZ** and Conspirator A used multiple internet-based encrypted methods to communicate;
>
> b.     Conspirator A tasked **KORBEIN SCHULTZ** with collection priorities as to the type of U.S. military information Conspirator A was interested in receiving, including national defense information;

5

c.    Conspirator A instructed **KORBEIN SCHULTZ** to gather non-public U.S. military information, including national defense information, and told **KORBEIN SCHULTZ** that original and exclusive documents were preferred;

d.    Conspirator A instructed **KORBEIN SCHULTZ** to destroy evidence regarding the nature of their relationship and their activities;

e.    **KORBEIN SCHULTZ** surreptitiously attempted to gather national defense information for Conspirator A by, among other actions, accessing restricted U.S. Government computer systems to access such information;

f.    **KORBEIN SCHULTZ** transmitted and attempted to transmit to Conspirator A sensitive U.S. military information including export-controlled technical data and tactical information contained in manuals and other documents pertaining to the F-22A fighter aircraft, the HH-60W helicopter, and intercontinental ballistic missiles; and

g.    Conspirator A paid **KORBEIN SCHULTZ** in exchange for his efforts to collect and transmit sensitive U.S. military information, including national defense information and export-controlled technical data related to defense articles.

<u>Overt Acts in Furtherance of the Conspiracy</u>

19.    In furtherance of the conspiracy and to achieve the objects thereof, **KORBEIN SCHULTZ** and Conspirator A committed and caused to be committed the following overt acts, among others, in the Middle District of Tennessee and elsewhere:

6

a.     Between on or about June 7, 2022 and July 12, 2022, Conspirator A contacted **KORBEIN SCHULTZ**, and requested information available to **KORBEIN SCHULTZ** as an enlisted service member of the U.S. Army.

b.     On or about June 25, 2022, Conspirator A directed **KORBEIN SCHULTZ** to provide information on the lessons that could be learned from Russia's war with Ukraine, and with those lessons, what the United States could and should do to help defend Taiwan from an attack.

c.     On or about July 6, 2022, **KORBEIN SCHULTZ** submitted a draft document pertaining to Conspirator A's request to Conspirator A, who then paid $200 to **KORBEIN SCHULTZ**.

d.     On or about July 8, 2022, **KORBEIN SCHULTZ** informed Conspirator A that he would like to turn their relationship into a long-term partnership.

e.     On or about July 12, 2022, Conspirator A requested that **KORBEIN SCHULTZ** provide documents that were not open-source material and indicated that open-source material would receive less compensation.

f.     On or about July 26, 2022, Conspirator A requested that **KORBEIN SCHULTZ** provide information pertaining to the HIMARS artillery weapon system, along with specific information about HIMARS performance data and how this weapon system is integrated in warfare.[2]

g.     On or about July 26, 2022, **KORBEIN SCHULTZ** sent Conspirator A a document pertaining to the HIMARS weapon system in accordance with Conspirator A's request.

---

[2] HIMARS stands for High Mobility Artillery Rocket System, which allows for the launching of multiple, precision-guided rockets.

h.     On or about July 27, 2022, Conspirator A told **KORBEIN SCHULTZ** that if the recently transmitted material was "internal-only" material rather than "unclassified," then Conspirator A could get **KORBEIN SCHULTZ** more money. **KORBEIN SCHULTZ** acknowledged this directive and stated that he would "see what sort of internal references [he] could get [his] hands on."

i.     On or about July 27, 2022, **KORBEIN SCHULTZ** downloaded another document from a U.S. Government computer system that pertained to the HIMARS weapon system and transmitted it to Conspirator A.

j.     On or about July 27, 2022, Conspirator A discussed with **KORBEIN SCHULTZ** the need to have secure communications so that nothing would be traceable, and that passing information with classification levels in a secure manner would result in higher compensation for **KORBEIN SCHULTZ**. **KORBEIN SCHULTZ** acknowledged this directive and stated that he would try to get the requested information for Conspirator A.

k.     On or about July 29, 2022, Conspirator A and **KORBEIN SCHULTZ** discussed hiding their illegal activities by, among other things, falsely describing their online financial transactions as related to "car customization."

l.     From on or about July 30, 2022, to on or about August 1, 2022, **KORBEIN SCHULTZ** downloaded approximately 14 additional documents, including documents pertaining to HIMARS, from a U.S. Government computer system.

m.     On or about August 2, 2022, Conspirator A tasked **KORBEIN SCHULTZ** with acquiring more sensitive military information, including information on hypersonic equipment, studies on future development of U.S. military forces, studies on major countries such as the People's Republic of China ("China"), and summaries of military drills/operations.

8

Conspirator A also told **KORBEIN SCHULTZ** that the requirement for this information was that it be exclusive, not available on the internet, and that "if there is classification level, the best."

n. On or about August 2, 2022, **KORBEIN SCHULTZ** told Conspirator A that he would "try for the exclusivity."

o. On or about August 3, 2022, **KORBEIN SCHULTZ** sent Conspirator A a document that he had previously sent to his personal email account from his Army email account relating to the security of U.S. military command posts. This document contained CUI markings.

p. On or about August 3, 2022, **KORBEIN SCHULTZ** downloaded approximately 14 additional documents from a U.S. Government computer system pertaining to sensitive U.S. military information, including a document pertaining to U.S. Navy exercises in the Philippine Sea and China's observations on these exercises. **KORBEIN SCHULTZ** provided this document to Conspirator A on the same date.

q. On or about August 4, 2022, Conspirator A told **KORBEIN SCHULTZ** that if the document pertaining to the Philippine Sea contained classified information, Conspirator A could pay **KORBEIN SCHULTZ** more money, to which **KORBEIN SCHULTZ** responded, "I hope so! I need to get my other BMW back!"

r. On or about August 4, 2022, Conspirator A informed **KORBEIN SCHULTZ** how much he would be paid for the documents he had transmitted and directed him to provide additional documents. Conspirator A also noted that the classification level of the documents was the most important factor to consider, and that documents that were "marked," including documents marked CUI, would have a higher value than documents that were unmarked.

s. On or about August 4, 2022, **KORBEIN SCHULTZ** told Conspirator A that he would "continue to search for more documents that are marked more!"

t.        On or about August 4, 2022, **KORBEIN SCHULTZ** downloaded six (6) additional documents from a U.S. Government computer system, including a document pertaining to the HH-60W helicopter[3] that was marked CUI, and included a banner warning that the document contained technical data subject to export controls, and that its distribution was limited to U.S. Government or U.S. Department of Defense personnel.

u.        On or about August 4, 2022, **KORBEIN SCHULTZ** told Conspirator A that he had a document that they talked about previously, and sent Conspirator A photos of a computer screen displaying information from the document related to the HH-60W helicopter.

v.        From on or about August 4, 2022 to on or about August 8, 2022, **KORBEIN SCHULTZ** and Conspirator A discussed how to securely send files that **KORBEIN SCHULTZ** had downloaded from U.S. Government computer systems. Conspirator A instructed **KORBEIN SCHULTZ** to get a new phone and to set up a new account with a foreign electronic messaging application so that **KORBEIN SCHULTZ** could send Conspirator A files securely.

w.        On or about August 7, 2022, **KORBEIN SCHULTZ** downloaded from a U.S. Government computer system a document pertaining to the F-22A fighter aircraft[4] that was marked CUI and included a banner warning that the document contained technical data subject to export controls, and that its distribution was limited to U.S. Government or U.S. Department of Defense personnel.

---

[3] The HH-60W "Jolly Green" helicopter is a combat rescue helicopter and is an advanced version of the better-known UH-60M Black Hawk helicopter.

[4] The F-22 Raptor is a fifth-generation air superiority fighter aircraft.

10

x.      On or about August 7, 2022, **KORBEIN SCHULTZ** sent Conspirator A photos taken from a computer screen of relevant pages from the document pertaining to the F-22A fighter aircraft.

y.      On or about August 8, 2022, **KORBEIN SCHULTZ** was paid approximately $1,768 for transmitting sensitive U.S. military documents to Conspirator A.

z.      On or about August 9, 2022, **KORBEIN SCHULTZ** downloaded a document pertaining to intercontinental ballistic missiles[5] that was marked CUI and contained a banner warning that the document contained technical data subject to export controls, and that its distribution was limited to U.S. Government or U.S. Department of Defense personnel. **KORBEIN SCHULTZ** sent screenshots to Conspirator A showing the table of contents of the document pertaining to intercontinental ballistic missiles to Conspirator A.

aa.     On or about August 11, 2022, **KORBEIN SCHULTZ** was paid approximately $898 for transmitting sensitive U.S. military documents to Conspirator A.

bb.     From on or about August 12, 2022 to on or about August 15, 2022, **KORBEIN SCHULTZ** and Conspirator A discussed the value of the materials that were passed. Conspirator A told **KORBEIN SCHULTZ** that the documents needed to be exclusive and that documents marked CUI would usually garner $1,000 each. Conspirator A also advised **KORBEIN SCHULTZ** to set up a secure payment system account.

cc.     On or about August 12, 2022, **KORBEIN SCHULTZ** told Conspirator A that he would seek out more exclusive documents like the documents he transmitted pertaining to the HIMARS weapon system.

---

[5] An intercontinental ballistic missile typically has a range of thousands of miles and has greater range and speed than other missiles. An intercontinental ballistic missile was historically designed for nuclear weapons delivery.

dd.     On or about August 16, 2022, **KORBEIN SCHULTZ** downloaded approximately 23 additional documents from a U.S. Government computer system including documents related to China, and also a document regarding the U-2 high-altitude reconnaissance aircraft that included a banner warning with export restriction markings.

ee.     On or about August 19, 2022, **KORBEIN SCHULTZ** was paid approximately $3,015 for transmitting sensitive U.S. military documents to Conspirator A.

ff.     On or about August 22, 2022, Conspirator A sent **KORBEIN SCHULTZ** additional requests for sensitive U.S. military information, including information on the THAAD aerial missile defense system,[6] military satellites, and information related to U.S. forces in the Republic of Korea.

gg.     On or about August 23, 2022, **KORBEIN SCHULTZ** downloaded approximately 10 additional documents from a U.S. Government computer system pertaining to Conspirator A's requests, including information related to the THAAD missile defense system.

hh.     On or about August 24, 2022, Conspirator A advised **KORBEIN SCHULTZ** that Conspirator A had received the documents that **KORBEIN SCHULTZ** had sent.

ii.     On or about August 24, 2022, **KORBEIN SCHULTZ** told Conspirator A that one of the documents was marked "un…" but that despite its file name it is "c…" and that he hoped Conspirator A would like the recent documents he sent.

jj.     On or about August 25, 2022, Conspirator A told **KORBEIN SCHULTZ** that "c…" and above materials on China will receive higher compensation and that **KORBEIN SCHULTZ** should look for and prioritize these documents.

---

[6] THAAD stands for Terminal High Altitude Area Defense and is an integrated air and missile defense system.

kk.     On or about August 26, 2022, **KORBEIN SCHULTZ** downloaded approximately seven (7) additional documents from a U.S. Government computer system and told Conspirator A, "I will just keep sending you an abundance of information."

ll.     On or about August 27, 2022, **KORBEIN SCHULTZ** told Conspirator A that he wished he could be "Jason Bourne."

mm.     On or about September 2, 2022, Conspirator A told **KORBEIN SCHULTZ** that "books/manuals" on weapons systems "work best" and discussed compensation for the passing of these documents.

nn.     On or about September 2, 2022, **KORBEIN SCHULTZ** told Conspirator A that he thought about moving "to Hong Kong and work for you in person."

oo.     On or about September 7, 2022, **KORBEIN SCHULTZ** was paid approximately $3,500 for transmitting sensitive U.S. military documents to Conspirator A.

pp.     On or about September 27, 2022, Conspirator A told **KORBEIN SCHULTZ** that when Conspirator A was in "the service" Conspirator A had access to an intranet, and encouraged **KORBEIN SCHULTZ** to pull documents from that system. On the same date, Conspirator A told **KORBEIN SCHULTZ** that "the other option" would be to find a "third partner."

qq.     On or about September 28, 2022, **KORBEIN SCHULTZ** informed Conspirator A that he had a "few prospects" and a "buddy who is interested in writing reports."

rr.     From on or about September 29, 2022 to on or about October 4, 2022, **KORBEIN SCHULTZ** and Conspirator A discussed the recruitment of a third party, known to the grand jury as U.S. Person 1, a fellow U.S. Army soldier assigned to another area of responsibility.

13

ss.     On or about October 5, 2022, **KORBEIN SCHULTZ** downloaded approximately nine (9) additional military documents from a U.S. Government computer system.

tt.     On or about October 7, 2022, **KORBEIN SCHULTZ** told Conspirator A that he received a file from U.S. Person 1, and Conspirator A acknowledged receipt of the file from **KORBEIN SCHULTZ**.

uu.     On or about October 11, 2022, **KORBEIN SCHULTZ** was paid approximately $2,000 for transmitting sensitive U.S. military documents to Conspirator A.

vv.     From on or about October 12, 2022 to on or about October 14, 2022, **KORBEIN SCHULTZ** and Conspirator A discussed the continued recruitment of U.S. Person 1 and the military topics that they would request information about from U.S. Person 1. **KORBEIN SCHULTZ** and Conspirator A also discussed operational security measures to protect U.S. Person 1 and assigned U.S. Person 1 a codename.

ww.     On or about October 20, 2022, **KORBEIN SCHULTZ** downloaded approximately four (4) additional U.S. military documents from a U.S. Government computer system, including a document related to China's military preparedness, and advised Conspirator A of this new information.

xx.     From on or about October 20, 2022 to on or about October 24, 2022, **KORBEIN SCHULTZ** and Conspirator A discussed the quality of the documents that **KORBEIN SCHULTZ** had passed, and Conspirator A advised **KORBEIN SCHULTZ** on the compensation of the documents themselves, noting that "higher level" documents would earn **KORBEIN SCHULTZ** more money.

14

yy.     On or about October 24, 2022, **KORBEIN SCHULTZ** told Conspirator A that he would try to find "better docs" and also advised that he would increase his recruitment efforts with U.S. Person 1.

zz.     On or about November 4, 2022, Conspirator A asked **KORBEIN SCHULTZ** if U.S. Person 1 could provide information pertaining to INDOPACOM[7] studies of the Russia-Ukraine war, INDOPACOM's studies on Taiwan, along with other information pertaining to sensitive military weapons systems and operations.

aaa.     On or about November 7, 2022, U.S. Person 1 sent **KORBEIN SCHULTZ** a paper titled "INDOPACOM Lessons Learned."

bbb.     From on or about November 7, 2022 to on or about November 10, 2022, Conspirator A discussed with **KORBEIN SCHULTZ** the quality of the information provided by U.S. Person 1. Conspirator A told **KORBEIN SCHULTZ** that the information was "too simple" and that Conspirator A and Conspirator A's purported clients are "at least expecting c…"

ccc.     On or about November 9, 2022, **KORBEIN SCHULTZ** told Conspirator A that he would try to get a compilation of source material pertaining to U.S. Person 1's paper and the next day downloaded seven (7) additional U.S. military documents from a U.S. Government computer system. Some of these documents pertained to small, unmanned aircraft systems in large scale combat operations. Conspirator A acknowledged receipt of these documents from **KORBEIN SCHULTZ** on or about November 10, 2022.

ddd.     On or about November 19, 2022, **KORBEIN SCHULTZ** downloaded an additional 18 U.S. military documents from a U.S. Government computer system. Some of these

---

[7] INDOPACOM is the unified combatant command of the U.S. military responsible for the Indo-Pacific Region, including China and Taiwan.

documents pertained to short-range air defense systems. Conspirator A acknowledged receipt of these documents from **KORBEIN SCHULTZ** on or about November 20, 2022.

eee.   On or about December 1, 2022, **KORBEIN SCHULTZ** was paid approximately $1,000 for transmitting sensitive U.S. military documents to Conspirator A.

fff.   On or about December 6, 2022, **KORBEIN SCHULTZ** downloaded approximately 14 military documents from a U.S. Government computer system. Some of these documents pertained to interference with airborne radar, as well as information on a U.S. Marine Corps exercise. Conspirator A acknowledged receipt of the documents from **KORBEIN SCHULTZ** on the same date.

ggg.   On or about December 7, 2022, Conspirator A asked if anything in the latest batch of documents contained "s...material" and **KORBEIN SCHULTZ** advised Conspirator A that one of the documents he transmitted is a "pre depl...ment op...rd".

hhh.   On or about December 27, 2022, **KORBEIN SCHULTZ** was paid approximately $5,000 for transmitting sensitive U.S. military documents to Conspirator A.

iii.   On or about January 10, 2022, **KORBEIN SCHULTZ** downloaded approximately 9 military documents from a U.S. Government computer system including an additional document marked CUI. Conspirator A acknowledged receipt of these documents from **SCHULTZ** on the following date.

jjj.   On or about January 12, 2023, KORBEIN SCHULTZ downloaded a document from a Department of Defense computer system pertaining to Chinese military tactics. On or about January 16, 2023, Conspirator A acknowledged receipt of that document from SCHULTZ.

kkk.     On or about January 31, 2023, **KORBEIN SCHULTZ** was paid approximately $2,999.61 for transmitting sensitive U.S. military documents to Conspirator A.

lll.     On or about February 9, 2023, **KORBEIN SCHULTZ** downloaded a document from a Department of Defense computer system pertaining to China's People's Liberation Army Rocket Force.

mmm. In and around August 2022, **KORBEIN SCHULTZ** advised Conspirator A that he would be deployed overseas. From on or about February 10, 2023 to on or about February 22, 2023, **KORBEIN SCHULTZ** and Conspirator A discussed operational security measures and secure communications to allow **KORBEIN SCHULTZ** to securely communicate with Conspirator A while he was deployed overseas.

nnn.     On or about March 3, 2023, **KORBEIN SCHULTZ** downloaded from a Department of Defense computer system approximately 12 documents and told Conspirator A on or about March 4, 2023, that he obtained these documents, but that they were marked "u" because it is harder to find "c" related stuff. Conspirator A acknowledged receipt of documents from **SCHULTZ** on or about March 5, 2023.

ooo.     On or about March 22, 2023, **KORBEIN SCHULTZ** was paid approximately $5,499.61 for transmitting sensitive U.S. military documents to Conspirator A.

ppp.     On or about May 2, 2023, **KORBEIN SCHULTZ** and Conspirator A discussed specific requests for information. On or about the same date, **KORBEIN SCHULTZ** downloaded approximately 28 additional documents from a U.S. Government computer system.

qqq.     On or about May 20, 2023, Conspirator A told **KORBEIN SCHULTZ** that Conspirator A would like to meet him at a Formula 1 race overseas and make him a "senior partner" with a "big signing bonus." **KORBEIN SCHULTZ** responded, "Oh snap!"

rrr.    On or about June 2, 2023, **KORBEIN SCHULTZ** was paid approximately $3,999.61 for transmitting sensitive U.S. military documents to Conspirator A.

sss.    On or about June 9, 2023, **KORBEIN SCHULTZ** downloaded approximately 26 documents from a U.S. Government computer system and advised Conspirator A that he would be sending them to Conspirator A for review. Some of these documents pertained to modifications of the B-52 aircraft,[8] as well as countering unmanned aircraft systems.

ttt.    On or about June 14, 2023, **KORBEIN SCHULTZ** downloaded approximately 14 documents from a U.S. Government computer system and advised Conspirator A that he would be sending them to Conspirator A for review.

uuu.    From on or about June 14, 2023 to on or about July 18, 2023, Conspirator A and **KORBEIN SCHULTZ** discussed the quality of the documents and the amount of compensation for the documents transmitted by **KORBEIN SCHULTZ**.

vvv.    On or about July 18, 2023, **KORBEIN SCHULTZ** was paid approximately $4,999.61 for transmitting sensitive U.S. military documents to Conspirator A.

www.    On or about August 10, 2023, **KORBEIN SCHULTZ** and Conspirator A discussed the recent arrests of two U.S. Navy sailors who were charged with passing sensitive military information to a Chinese intelligence service. Conspirator A advised **KORBEIN SCHULTZ** that they must be more careful with security.

xxx.    On or about September 11, 2023, **KORBEIN SCHULTZ** told Conspirator A that once he was back from his overseas deployment they can "start back working!"

yyy.    On or about October 2, 2023, **KORBEIN SCHULTZ** told Conspirator A that he was ready to get back to work.

---

[8] The B-52 is a long-range strategic bomber aircraft.

zzz. On or about October 24, 2023, **KORBEIN SCHULTZ** was paid approximately $4,500 for transmitting sensitive U.S. military documents to Conspirator A.

aaaa. On or about November 27, 2023, Conspirator A asked **KORBEIN SCHULTZ** if he would be available for a phone call to discuss "work for the next year." **KORBEIN SCHULTZ** and Conspirator A subsequently discussed their work.

bbbb. From on or about July 2022 to on or about October 2023, **KORBEIN SCHULTZ** received approximately 14 payments from Conspirator A, totaling approximately $42,000.

All in violation of Title 18, United States Code, Section 793(g).

## COUNT TWO

### UNLAWFUL EXPORT OF DEFENSE ARTICLES TO CHINA
[22 U.S.C. § 2778]

20. The allegations contained in paragraphs 1 through 19 are realleged and incorporated as if fully set forth in this paragraph.

21. On or about August 4, 2022, within the Middle District of Tennessee, and elsewhere, defendant **KORBEIN SCHULTZ**, did willfully export from the United States to the People's Republic of China export-controlled technical data related to defense articles, to wit, an Air Force Tactics Techniques and Procedures manual for the HH-60W helicopter, without first obtaining the required license or written approval from the U.S. State Department.

In violation of Title 22, United States Code, Sections 2778(b)(2) and (c), Title 22, Code of Federal Regulations, Sections 121.1, 127.1, and 127.3, and Title 18, United States Code, Section 2.

## COUNT THREE

### UNLAWFUL EXPORT OF DEFENSE ARTICLES TO CHINA
[22 U.S.C. § 2778]

22. The allegations contained in paragraphs 1 through 19 are realleged and incorporated as if fully set forth in this paragraph.

23. On or about August 7, 2022, within the Middle District of Tennessee, and elsewhere, defendant **KORBEIN SCHULTZ**, did willfully export from the United States to the People's Republic of China export-controlled technical data related to defense articles, to wit, an Air Force Tactics Techniques and Procedures manual for the F22-A fighter aircraft, without first obtaining the required license or written approval from the U.S. State Department.

In violation of Title 22, United States Code, Sections 2778(b)(2) and (c), Title 22, Code of Federal Regulations, Sections 121.1, 127.1, and 127.3, and Title 18, United States Code, Section 2.

## COUNT FOUR

### UNLAWFUL EXPORT OF DEFENSE ARTICLES TO CHINA
[22 U.S.C. § 2778]

24. The allegations contained in paragraphs 1 through 19 are realleged and incorporated as if fully set forth in this paragraph.

25. On or about August 9, 2022, within the Middle District of Tennessee, and elsewhere, defendant **KORBEIN SCHULTZ**, did willfully export from the United States to the People's Republic of China export-controlled technical data related to defense articles, to wit, an Air Force Tactics Techniques and Procedures manual for intercontinental ballistic missiles, without first obtaining the required license or written approval from the U.S. State Department.

In violation of Title 22, United States Code, Sections 2778(b)(2) and (c), Title 22, Code of Federal Regulations, Sections 121.1, 127.1, and 127.3, and Title 18, United States Code, Section 2.

<u>COUNT FIVE</u>

CONSPIRACY TO UNLAWFULLY EXPORT DEFENSE ARTICLES TO CHINA
[22 U.S.C. § 2778]

26.    The allegations contained in paragraphs 1 through 25 are realleged and incorporated as if fully set forth in this paragraph.

27.    Beginning in or about June 2022, and continuing through the present, within the Middle District of Tennessee, and elsewhere, defendant **KORBEIN SCHULTZ,** and Conspirator A, did knowingly and unlawfully conspire together and with each other and with others, known and unknown to the grand jury, to willfully export technical data related to defense articles from the United States to the People's Republic of China without first having obtained the required licenses from the U.S. State Department.

In violation of Title 22, United States Code, Sections 2778(b)(2) and (c), and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a)(4), and 127.3.

<u>Manner and Means of the Conspiracy</u>

28.    **KORBEIN SCHULTZ** and Conspirator A used the following manner and means, among others, to export technical data related to defense articles from the United States to the People's Republic of China without first having obtained the required licenses form the U.S. Department of State:

       a.      **KORBEIN SCHULTZ** and Conspirator A used multiple internet-based encrypted methods to communicate;

       b.      Conspirator A tasked **KORBEIN SCHULTZ** with collection priorities and the type of U.S. military information Conspirator A was interested in receiving;

21

c.       Conspirator A instructed **KORBEIN SCHULTZ** to gather U.S. military information that was not public and told him that original documents were preferred;

d.       Conspirator A instructed **KORBEIN SCHULTZ** to destroy evidence regarding the nature of their relationship and their activities;

e.       **KORBEIN SCHULTZ** surreptitiously gathered export-controlled information concerning the U.S. military for Conspirator A, using his phone to take photographs and his access to restricted computer systems to gather information;

f.       **KORBEIN SCHULTZ** exported controlled technical information concerning defense articles related to the U.S. military to Conspirator A, who he knew lived in China, without obtaining the required licenses or approval from the U.S. Department of State; and

g.       Conspirator A paid **KORBEIN SCHULTZ** in exchange for the information and documents that **KORBEIN SCHULTZ** provided to Conspirator A.

<u>Overt Acts in Furtherance of the Conspiracy</u>

29.    In furtherance of the said conspiracy and to achieve the objects thereof, **KORBEIN SCHULTZ** and Conspirator A committed and caused to be committed, among others, the overt acts alleged in paragraphs 19(a) through 19(bbbb) above.

All in violation of Title 22, United States Code, Sections 2778(b)(2) and (c), and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(a)(4), and 127.3.

22

## COUNT SIX

### BRIBERY OF PUBLIC OFFICIAL
[18 U.S.C. § 201(b)(2)(C)]

30.     The allegations contained in paragraphs 1 through 29 are realleged and incorporated as if fully set forth in this paragraph.

31.     From in or about June 2022, and continuing through the present, in the Middle District of Tennessee, and elsewhere, defendant **KORBEIN SCHULTZ**, a public official, namely, an Intelligence Analyst in the United States Army responsible for, among other duties, protecting United States military sensitive, CUI-marked, and operational security information, directly and indirectly, corruptly received, accepted, and agreed to receive and accept something of value, namely, U.S. dollars, in return for being induced to do an act and omit doing an act in violation of his official duties. Specifically, **KORBEIN SCHULTZ** corruptly received and accepted approximately 14 payments totaling approximately $42,000 from Conspirator A, an individual who was located in China, in exchange for gathering documents, photographs, writings and information containing sensitive, CUI-marked, and United States military operational security details and providing them to Conspirator A. Such conduct violated **KORBEIN SCHULTZ's** duties and responsibilities as an Intelligence Analyst, including the duty to protect sensitive, CUI-marked, and U.S. military documents and information.

All in violation of Title 18, United States Code, Section 201(b)(2)(C).

### Criminal Forfeiture

32.     The allegations contained in Counts One through Six of this Indictment are realleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections

23

793(h) and 981(a)(1)(C), Title 21, United States Code, Section 853(p), Title 22, United States Code, Section 401, and Title 28, United States Code, Section 2461(c).

33.     Upon conviction of the alleged offense in Count One, defendant **KORBEIN SCHULTZ**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 793(h)(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, from any foreign government, or any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, as a result of such violation.

34.     Upon conviction of one and more of the offenses alleged in Counts Two, Three, Four, and Five and pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 22, United States Code, Section 401, and Title 28, United States Code, Section 2461(c) **KORBEIN SCHULTZ**, shall forfeit to the United States all property constituting, and derived from, any proceeds the defendant obtained, directly and indirectly, as a result of the offenses and all arms and munitions of war, and all commodities and technology which is intended to be and was being exported in violation of law.

35.     Upon conviction of the alleged offense in Count Six, **KORBEIN SCHULTZ**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and to the extent such property is not available for forfeiture, a sum of money equal to the total value described above.

36.     If any of the forfeitable property described above in paragraphs 32 through 35, as a result of any act or omission of the defendant;

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) which incorporates the provisions of Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

All pursuant to Title 18, United States Code, Sections 793(h) and 981(a)(1)(C), Title 22, United States Code, Section 401, and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

Foreperson

HENRY C. LEVENTIS
United States Attorney

By: JOSH KURTZMAN
Assistant U.S. Attorney

CHRISTOPHER M. COOK
ADAM BARRY
Trial Attorneys
National Security Division